No.   92-494

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

---

STATE OF MONTANA,

   Plaintiff and Respondent,

-vs-

DARREN JAMES BROWN,

   Defendant and Appellant.

---

APPEAL FROM: District Court of the Fifth Judicial District,
       In and for the County of Jefferson,
       The Honorable Robert J. Boyd, Judge presiding.


COUNSEL OF RECORD:

   For Appellant:

     Mark P. Yeshe, Attorney at Law, Helena, Montana

   For Respondent:

     Hon. Joseph P. Mazurek, Attorney General, Micheal
     Wellenstein, Assistant Attorney General, Helena,
     Montana

     Richard J. Llewellyn, Jefferson County Attorney,
     Boulder, Montana

---

FILED

JAN 27 1994

Filed: *Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted on Briefs: October 28, 1993

Decided: January 27, 1994

_____
Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

On January 29, 1992, Darren J. Brown (Brown) pled guilty to one count each of felony criminal endangerment, negligent homicide and obstructing justice. The charges stemmed from Brown's participation in an incident in Whitehall, Montana, during which he lost control of his vehicle and struck two pedestrians. Mona Ness was killed instantly and Theresa Wilkinson was injured severely.

The District Court sentenced Brown to terms of imprisonment, partially suspended, and conditioned the suspended portion of his sentence on payment of restitution to the victims and/or their families. Because we identify a number of errors in the restitution condition, we reverse that portion of the sentence, and remand for further proceedings.

In sentencing Brown, the District Court found that, although the husbands and families of Mona Ness and Theresa Wilkinson had all incurred staggering financial losses, the exact dollar amount of those damages was unclear. It also found that Brown had been employed as a prison guard, had marketable skills and owned a car, a number of guns and $2,580 in a Public Employees' Retirement System (PERS) account. Based on these findings, the District Court subjected Brown's suspended sentence to the following condition:

> 7. The Defendant shall pay restitution to the victims of his said offenses. However, the determination of the exact amount of such restitution, due each victim and/or victim's family (comprising the estate of Mona Ness and/or her husband and family, and Theresa Wilkinson and/or her husband and family) shall not be made by the Court until civil remedies have been exhausted and the Court retains jurisdiction over the restitution issues and any all [sic] issues pertinent thereto. Further,

2

pending an ultimate determination of such restitution issues by the Court, the Adult Probation and Parole Bureau is authorized and directed to withdraw the proceeds of the Defendant's account with the Public Employees' Retirement System, to sell the Defendant's 1979 Trans Am, to sell all of the Defendant's firearms . . . and to equally divide the proceeds of all such withdrawals and sales between (the estate of) Mona Ness and Theresa Wilkinson. . . . All such distributions to victims shall be applied to the total restitution amount which is ultimately determined. . . .

Section 46-18-201(1)(b), MCA, expressly authorizes a district court to condition a suspended sentence on payment of restitution to the victim. Other statutes provide detailed procedures and requirements for imposing restitution as a condition of a sentence under § 46-18-201, MCA. See §§ 46-18-241 through 250, MCA. We agree with the parties that, in large part, these procedures and requirements were not met here when the District Court imposed restitution as a condition of Brown's suspended sentence.

When a court believes restitution may be a proper condition of a sentence, the presentence investigation report must include:

(a) documentation of the offender's financial resources and future ability to pay restitution; and

(b) documentation of the victim's pecuniary loss. . . .

Section 46-18-242, MCA.

The presentence investigation report prepared in this case contains no documentation of the pecuniary loss of either victim as required by § 46-18-242(2), MCA. Section 46-18-243(1), MCA, defines pecuniary loss as:

(a) all special damages, but not general damages, substantiated by evidence in the record, that a person could recover against the offender in a civil action arising out of the facts or events constituting the offender's criminal activities, including without

3

limitation the money equivalent of loss resulting from property taken, destroyed, broken, or otherwise harmed and out-of-pocket losses, such as medical expenses; and

(b) reasonable out-of-pocket expenses incurred by the victim in filing charges or in cooperating in the investigation and prosecution of the offense.

The report states only that Mr. Wilkinson estimated Theresa's medical expenses in excess of $150,000 and further notes that Mona Ness was earning $10 per hour at the time of her death. As the statute indicates, pecuniary loss must be documented by evidence in the record. Clearly, these minimal assertions do not comply with the statutory requirements.

Additionally, the presentence investigation report contains inadequate documentation of Brown's financial resources. While it listed Brown's current assets, it only assigned a monetary value to his PERS retirement account. Further, although the report noted that Brown was suspended without pay from his job as a prison guard, it provided no documentation regarding Brown's future ability to pay restitution after his release from prison.

We conclude that the presentence investigation and report in the case before us did not comply with § 46-18-242, MCA. Without the documentation required by the statute, a district court is unable to make a meaningful determination of the propriety or amount of a restitution provision in a sentence.

As a probable consequence of the lack of information in the presentence investigation report, the District Court's actual order of restitution also is deficient. Section 46-18-244(1), MCA, requires the court to specify the amount, method and time of

4

payment of restitution to the victim. None of these requirements was met in this case. Furthermore, § 46-18-244(2), MCA, requires the court to consider the defendant's financial resources and future ability to pay restitution when determining the amount, method and time of payment. Under Montana's statutory scheme, district courts are not authorized to order restitution until all such statutory requirements are satisfied.

Additionally, the parties agree that the District Court improperly contemplated restitution to the victims' families. Restitution is statutorily limited to the "victim" of the crime, who is defined as "a person who suffers a loss of property, bodily injury, or death as a result of criminally injurious conduct." Section 46-18-243(2)(a), MCA. As conceded by the State, the individual family members cannot be considered victims because they have not suffered a "loss of property, bodily injury, or death" as a result of Brown's conduct.

We hold that the District Court did not comply with §§ 46-18-242 through 244, MCA, in conditioning Brown's suspended sentence on restitution to the victims and their families. As detailed above, the presentence investigation report and the District Court's order of restitution did not meet the statutory requirements for the imposition of restitution on a suspended sentence.

Brown asserts additional error in the asset forfeiture portion of the District Court's restitution condition, arguing that the court was without any statutory authority to order the sale of his assets. The State argues, on the other hand, that the asset

5

forfeiture is authorized as a "limitation reasonably related to the objectives of rehabilitation and the protection of society" pursuant to § 46-18-202(1)(e), MCA. We conclude that Brown is partially correct in his assertion.

Section 46-18-201(1)(b), MCA, allows a sentencing court to impose reasonable restrictions or conditions such as restitution only <u>during the period of the suspended sentence</u>. In Brown's case, only ten years of his thirty-year sentence were suspended. Thus, no condition, including the asset forfeiture portion of the restitution provision, can commence until the suspended portion of Brown's sentence begins--after he has served his time in the state prison. In an analogous situation in State v. Klippenstein (1989), 239 Mont. 42, 46, 778 P.2d 892, 895, even though we interpreted a different time-related limitation on the sentencing court's authority, we concluded that a <u>present</u> order to sell the defendant's assets was improper. Here, § 46-18-201(1)(b), MCA, is clear--conditions, including restitution in general and the asset forfeiture portion in particular, may only be imposed on Brown during the period of his suspended sentence.

The State argues that § 46-18-202(1)(e), MCA, authorizes the asset forfeiture provision. We conclude that § 46-18-202(1)(e), MCA, is inapplicable here; therefore, we do not address whether an asset forfeiture could come within the parameters of the catch-all provision in § 46-18-202, MCA, under other circumstances.

Here, the District Court unambiguously imposed the asset forfeiture provisions as part of the restitution condition of

6

Brown's suspended sentence pursuant to § 46-18-201(1)(b), MCA. Section 46-18-201(1)(b), MCA, allows the court to impose, as a condition of a suspended sentence, any condition listed in § 46-18-201(1)(a), MCA, including the catch-all "any other reasonable conditions considered necessary for rehabilitation or for the protection of society" contained in § 46-18-201(1)(a)(xii), MCA. The language of the catch-all provisions of §§ 46-18-201(1)(a) and 46-18-202(1)(e), MCA, is nearly identical. Had the court actually relied on § 46-18-201(1)(a)(xii), MCA, in imposing an asset forfeiture separate from the restitution requirement, it would have been bound by the "during the period of suspended sentence" limitation in § 46-18-201(1)(b), MCA. Therefore, § 46-18-202(1)(e), MCA, cannot be utilized to avoid the terms of the specific statutory limitations relating to suspended sentences in § 46-18-201(1)(b), MCA; namely, the District Court may impose conditions on Brown as part of his suspended sentence only during the period of the suspended sentence.

We conclude that the District Court erred in ordering the present sale of Brown's assets because of the specific limitations in § 46-18-201(1)(b), MCA, and the inapplicability of § 46-18-202(1)(e), MCA, to the suspended sentence before us. At this juncture, it would be premature to assume that restitution will be ordered again and that an order to sell Brown's assets will be included in any future order. As such, we decline to rule on the actual merits of whether an asset forfeiture provision can be part of an otherwise appropriate restitution order.

7

As a final matter, Brown urges this Court to simply vacate the restitution portion of his sentence rather than remanding for further proceedings, arguing that a further hearing will not establish his future ability to pay. We decline to do so. As explained earlier, the presentence investigation and report are devoid of evidence of Brown's future financial ability to make restitution payments. On the basis of the existing record, this Court is in no better position to conclude that Brown is or is not able to make future restitution payments than was the District Court. Therefore, we remand this case for further proceedings with regard to the restitution portion of Brown's sentence and, in the event restitution is again ordered, for entry of appropriate findings.

Reversed and remanded for further proceedings consistent with this opinion.

_____
Justice

We concur:

_____
Chief Justice

_____

_____
Justices

8

Justice Terry N. Trieweiler specially concurring.

I concur with the result of the majority opinion, but not all that is said therein.

I would hold, as a matter of law, that there is no statutory basis for ordering forfeiture of the defendant's property in order to satisfy a restitution order. Section 46-18-202(1)(e), MCA, allows for the imposition of conditions on a sentence when it is "related to the objectives of rehabilitation and the protection of society." For the same reasons that I dissented in *State v. Bourne* (Mont. 1993), 856 P.2d 222, 50 St. Rep. 791, I conclude that taking property from a person who has already been imprisoned for his conduct is the antithesis of rehabilitation. To suggest that people coming out of prison are more likely to obey the law because their means of transportation and retirement income has been taken from them is absurd. Just the opposite is true. A person who has been stripped of his only means of transportation and all other worldly possessions is more likely to break the law again in order to catch up for lost time.

Therefore, I disagree with the majority's reluctance to address the State's unfounded contention head-on. I conclude that there is no statutory basis for the District Court's forfeiture order, and won't be in the future.

_____
Justice

Justice Hunt joins in the foregoing special concurrence.

_____
Justice

9

Chief Justice J. A. Turnage dissenting:

I respectfully dissent from the majority opinion.

During the day of July 25, 1991, appellant Darren James Brown, his brother Jeff Wayne Brown, and Gerald Mullaney traveled in a 1989 Jeep pickup from Butte, Silver Bow County, Montana, into Jefferson County, apparently to go fishing. During the day they all did some serious drinking.

During the early evening hours of that day, this trio stopped at the Two Bit Saloon in Whitehall, Montana, owned and operated by J. R. Stanley, who was then tending bar. The bar was occupied by at least three other patrons. The trio soon started a disturbance resulting in Stanley ordering them to leave.

Upon leaving, appellant Darren James Brown got behind the driver's wheel of the Jeep pickup, Mullaney was seated in the middle, and Jeff Wayne Brown was seated on the right passenger side. Appellant backed the pickup away from the parking position, rapidly accelerating backwards. He then drove the pickup slowly forward past the side door of the Two Bit Saloon, during which time his brother Jeff Wayne Brown leaned out of the passenger door window, holding a .357 magnum pistol in two hands, and fired approximately five rounds at and into the open door of the saloon.

At this point, appellant Darren James Brown accelerated and drove the pickup truck at an excessive rate of speed, estimated by a highway patrol officer at 62.5 miles per hour, and by other

10

witnesses at 70 to 80 miles per hour, to a point approximately four-tenths of a mile from the Two Bit Saloon. There, he crossed over the centerline of the road into the lane of on-coming traffic and beyond that to the pedestrian walkway, where he struck Mona Ness and Theresa Wilkinson, who were walking along the west side of Whitehall Street. Mona Ness was killed, and Theresa Wilkinson was seriously injured.

At the point where the victims were struck by the pickup, which was within the city limits of Whitehall, the speed limit was 25 miles per hour.

Appellant, without stopping, continued on at a high rate of speed for about another seven-tenths of a mile, until he ran into a ditch and stalled.

Four to five hours after the victims were struck, a blood sample was taken from appellant Darren James Brown. Upon laboratory analysis it was established that he had a blood alcohol content of .17 (nearly twice the amount required for presumptive driving under the influence of intoxicants) and also that he was confirmed as having ingested THC Cannabinoid (marijuana).

Darren James Brown was charged with and pled guilty to the felony offenses of obstructing justice, negligent homicide and criminal endangerment.

The District Court sentenced appellant to imprisonment in the Montana State Prison for ten years on each of the offenses, the

11

terms to run consecutively. The last ten years of the total of thirty years was suspended upon conditions.

One of the conditions imposed by the District Court and the sentencing document provided:

7. The Defendant shall pay restitution to the victims of his said offenses. However, the determination of the exact amount of such restitution, due to each victim and/or victim's family (comprising the estate of Mona Ness and/or her husband and family, and Theresa Wilkinson and/or her husband and family) shall not be made by the Court until civil remedies have been exhausted, and the Court retains jurisdiction over the restitution issues and any [and] all issues pertinent thereto. Further, pending an ultimate determination of such restitution issues by the Court, the Adult Probation and Parole Bureau is authorized and directed to withdraw the proceeds of the Defendant's account with the Public Employees' Retirement System, to sell the Defendant's 1979 Trans Am, to sell all of the Defendant's firearms (the Jennings .22 caliber weapon, the 9 mm Black semi-auto weapon, the .44 magnum Ruger revolver, the .45 caliber Smith & Wesson revolver, and the .357 magnum Ruger G.P. weapon), and to equally divide the proceeds of all such withdrawals and sales between (the estate of) Mona Ness and Theresa Wilkinson. Further, if the Defendant is a co-owner of the Jeep Cherokee vehicle utilized in the commission of his offenses, said vehicle shall also be sold and the Defendant's equity interest in the proceeds, and/or in the proceeds from any applicable collision or other damage insurance policy, shall be equally divided between the said victims in the foregoing manner. All such distributions to victims shall be applied to the total restitution amount which is ultimately determined. The Defendant shall fully cooperate in all efforts of the Parole and Probation Bureau in regard to such sales, recoveries and distribution.

Although the apparent meager assets of appellant Darren James Brown will not in any manner presently make restitution to the family of Mona Ness and to Theresa Wilkinson, nevertheless this

12

should not be any reason why restitution should not be required insofar as possible at the present time and not twenty years from now.

I do not believe the interpretation placed upon the statutes by the majority is either necessary or practical. Certainly after the years of incarceration that the appellant is facing until he reaches the time when his ten-year period of suspension arrives, there will not be any assets then available for any payment of restitution. These assets will disappear just as surely as quicksilver will slip through the tines of a dinner fork.

I also disagree with the Court's interpretation of § 46-18-243, MCA, where the Court concludes that restitution is statutorily limited to the "victim" of the crime and thereby limiting in this case the "victim" to decedent Mona Ness.

Section 46-18-241(1), MCA, provides:

**Condition of restitution.** (1) As provided in 46-18-201, a sentencing court may require an offender to make restitution to _any_ victim of the offense. [Emphasis supplied.]

The record in this case discloses that one of the victims in this crime is a family member of Mona Ness who has incurred a loss by being required to pay for counseling as a result of the death of her mother. She also is a victim.

13

Section 46-18-201, MCA, authorizes the District Court to include reasonable restrictions or conditions upon the defendant in passing sentence, which includes restitution.

The majority of this Court is reversing, in part, the order of restitution imposed by the District Court for the reason that § 46-18-201, MCA, contains language that provides "[t]he sentencing judge may impose on the defendant any reasonable restrictions or conditions during the period of suspended sentence." I do not agree that this language must be interpreted to require that the appellant must serve his twenty years of imprisonment before any consideration can be given to restitution. Such interpretation is not practical or reasonable.

It must further be noted that § 46-18-202, MCA, authorizes a district court, in addition to the restrictions provided for in § 46-18-201, MCA, to require that a defendant be subjected to "(e) any other limitation reasonably related to the objectives of rehabilitation and the protection of society."

I submit that it must be presumed that the appellant herein can be rehabilitated, and one of the most compelling and attention-obtaining means of rehabilitation is to take his wheels away from him and require him to subject the small amount of assets that he has accumulated to payment of restitution to the family of Mona Ness and to Theresa Wilkinson.

14

I would affirm the District Court but would require that the question of restitution be remanded for an adequate evidentiary hearing establishing the amounts of claimed damages and the assets available for payment thereof together with the future prospects of payment by the appellant.

I invite the Montana legislature to revisit these statutes for the purpose of providing practical and meaningful provisions for restitution.

_____
Chief Justice

January 27, 1994

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

Mark P. Yeshe
Attorney at Law
P.O. Box 483
Helena, MT 59624

Hon. Joseph P. Mazurek
Attorney General
Justice Bldg.
Helena, MT 59620

Richard J. Llewellyn
County Attorney
Jefferson County Courthouse
Boulder, MT 59632

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
    Deputy